**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**NOVEMBER SESSION, 1997**

**FILED**

**February 4, 1998**

**Cecil W. Crowson**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 01C01-9701-CC-00022** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **WILLIAMSON COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. DONALD P. HARRIS** |
| **STACY LYNN COLLIER,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (DUI) |


**ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF WILLIAMSON COUNTY**


FOR THE APPELLANT:

VANESSA P. BRYAN
Assistant Public Defender
P.O. Box 68
Franklin, TN 37065

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

JANIS L. TURNER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JOE D. BAUGH, JR.
District Attorney General

JOHN BARRINGER
Assistant District Attorney General
P.O. Box 937
Franklin, TN 37065-0937


OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Stacy Lynn Collier, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. She was convicted by a Williamson County jury of driving under the influence of an intoxicant ("DUI").[1] The trial court sentenced her to thirty days in the county jail, all suspended except for forty-eight hours, and eleven months and twenty-nine days of supervised probation. The trial court also imposed a fine of three hundred fifty dollars ($350), revoked the Defendant's driver's license for one year, and ordered that she use an ignition interlock during her probationary period.[2] In this appeal, the Defendant argues that the evidence was legally insufficient to support her conviction, that the trial court erred in admitting the result of an Intoximeter 3000 breath test, and that the trial court erred in admitting testimony concerning a horizontal gaze nystagmus ("HGN") field sobriety test. After reviewing the record, we conclude that the Defendant's issues provide no basis for the reversal of her conviction. Accordingly, we affirm the judgment of the trial court.

The State's proof at trial consisted of the testimony of two officers of the Fairview, Tennessee Police Department. Officer Joe Singer testified that he had been a police officer for two and one-half years and had received specialized training in DUI detection. At approximately 4:30 a.m. on the morning of May 14, 1995, Singer was driving his marked patrol car north on Highway 96 in Fairview. He observed a vehicle traveling toward him with the left front tire on the center

---

[1] Tenn. Code Ann. § 55-10-401.

[2] The trial court noted that the Defendant would be eligible for a restricted driver's license.

line. As the car passed him, he swerved slightly but was able remain in his lane. After the car had passed him, he watched the vehicle through his rearview mirror. Singer saw the car drift over the center line of the highway to the point where the vehicle's mid-line was over the center line. After observing the movements of the vehicle, Singer suspected that the driver was potentially intoxicated or asleep at the wheel. He turned his patrol car around, pursued and caught up with the vehicle in question. He initiated an investigatory stop. The Defendant was the driver of the vehicle.

Officer Singer noted that the Defendant pulled over onto the side of the road abruptly. Upon approaching the Defendant, he noticed a moderate odor of alcohol. According to Singer, the Defendant staggered upon exiting her vehicle. Singer informed the Defendant why he had stopped her and asked her to perform a series of field sobriety tests. The Defendant had been wearing high heels that night but chose not to wear them during the field sobriety tests.

Singer first performed an HGN test on the Defendant. Singer testified that the Defendant's eyes did not smoothly pursue the pen as he moved it, that he noticed nystagmus at maximum deviation, and that he noticed the onset of nystagmus before an angle of forty-five degrees from the Defendant's line of sight. He then asked the Defendant to perform a walk and turn test, consisting of nine heel-to-toe steps along the fog line of the highway, followed by a turn and nine heel-to-toe steps back along the line, all the while with the Defendant's hands at her sides. According to Singer, the Defendant missed placing her heel to her toe on every step, swayed and brought her arms up to maintain balance, stepped off the white fog line on her first step back, and performed a military turn

instead of the type of turn instructed. Singer then asked the Defendant to perform a one-legged stand test, consisting of lifting either of her feet approximately six inches off the ground and holding it there while counting to thirty, all the while with her hands at her sides. According to Singer, the Defendant was very unsteady, lifted her arms to maintain balance and put her foot down five times. He stopped the test before its completion for the Defendant's safety.

After the completion of the tests, Officer Singer believed that the results indicated that the Defendant's driving ability was impaired due to the use of an intoxicant. He placed her under arrest for DUI. The Defendant agreed to take a breath test at the Williamson County Jail. Officer Singer drove on the trip to the jail, the Defendant rode in the backseat directly behind him and Officer Chris Ivey rode in the backseat next to her. Officer Ivey rode in the backseat for the express purpose of observing the Defendant prior to the breath test. Although Officer Singer did not observe the Defendant during the entire trip, he testified that he did not witness the Defendant cough, regurgitate, drink, smoke, or place any foreign material in her mouth. Once they had arrived at the Williamson County Jail, Officer Singer administered a breath test on the Intoximeter 3000. Singer testified that the result of the breath test indicated that the Defendant had a 0.15% blood alcohol content.

On cross-examination, Singer admitted that his report would not indicate any factors or clues from the field sobriety tests supporting the Defendant's sobriety, such as her attentiveness during instructions for the various tests. He also admitted that he was unaware that the Defendant had asthma. Singer

testified that the Defendant was carrying a purse, which he placed on the front seat during the trip to the jail.

Officer Chris Ivey testified to essentially the same facts as Officer Singer. Officer Ivey corroborated Officer's Singer's testimony concerning the circumstances surrounding the stop of the Defendant's vehicle. Ivey noticed an odor of alcoholic beverage and stated that the Defendant was unsteady on her feet as she exited her car. Ivey observed Officer Singer as he gave the Defendant the field sobriety tests. Ivey corroborated Singer's testimony with regard to the walk and turn test and the one-legged stand test. Ivey stated that he was not in a position to observe the Defendant's eyes during the HGN test. Officer Ivey testified that during the trip to the jail, he sat in the backseat of the patrol car next to the Defendant and observed her continuously in anticipation of the breath test. According to Officer Ivey, the Defendant did not burp, vomit, smoke, or consume alcohol or food. Ivey also stated that he did not observe the Defendant using an inhaler for her asthma.

On cross-examination, Officer Ivey admitted that he was unaware that the Defendant had asthma. Ivey stated that to the best of his recollection, the Defendant was carrying a purse that night, but that he never had custody of it. Officer Ivey testified that although the Defendant was handcuffed, her wrists were small enough for her to slip her hands out of the handcuffs, which she did on at least one occasion. The Defendant informed the officers of this fact and even put her hands back in the handcuffs after they had slipped out.

The Defendant testified in marked contrast to Officers Singer and Ivey. She stated that at the time of the offense, she was a student and also worked at Middle Tennessee Mental Health Institute. She worked from 3:00 p.m. to 11:00 p.m. on Saturday, May 13, 1995. After her shift ended at 11:00 p.m., she met a friend, Shannon Batey, and followed her to a nearby dance club known as "Big Daddy's." They arrived at Big Daddy's at approximately 11:30 p.m. and remained there until 2:45 a.m. on Sunday morning. During that time, the Defendant consumed two Icehouse brand beers and drank water. Upon leaving Big Daddy's, the Defendant drove to a Waffle House restaurant and ate breakfast with friends. She did not consume any alcohol with breakfast. After breakfast, she drove home along Interstate 40, exiting at Highway 96. She was pulled over by Officers Singer and Ivey on Highway 96.

The Defendant denied driving across the center line of the highway. She also denied being unsteady on her feet upon exiting her vehicle. It is undisputed that she knew both officers from high school. She testified that the officers were sarcastic with her and that she found their demeanor to be somewhat rude and intimidating. With regard to the HGN test, she stated that although she was facing away from the patrol car, she found the flashing emergency lights to be distracting. With regard to the walk and turn test, she stated that she performed this test in her bare feet on broken, rocky pavement and, as a result, her feet hurt during the test. She admitted that she performed a military turn during the test, but stated that Officer Singer never instructed her to do a particular type of turn. According to the Defendant, she was never asked to perform the one-legged stand test.

After her arrest, the Defendant rode to the Williamson County Jail in the backseat of the patrol car. She testified that Officer Singer drove the patrol car and Officer Ivey rode in the front passenger seat. According to the Defendant, Officer Ivey did not observe her during the trip to the jail. Instead, he and Officer Singer carried on a conversation. The Defendant testified that although she was handcuffed, the handcuffs were too large for her wrists. As a result, she was able to slip her hands out of the handcuffs. During the trip to the jail, she slipped her hands out of the handcuffs and used an asthma inhaler.

Shannon Batey testified for the defense. Her testimony corroborated the Defendant's testimony concerning the first half of the evening. In particular, Batey testified that she had met the Defendant at Middle Tennessee Mental Health Institute at approximately 11:00 p.m. on May 13, 1995. They drove a short distance to a dance club known as Big Daddy's, arriving at approximately 11:30 p.m. Batey and the Defendant each had two beers during the evening. Batey stated she was sure the Defendant had consumed only two beers because they had been together the entire time for safety purposes. They left Big Daddy's at 2:30 to 2:45 a.m. on May 14, 1995. Batey followed the Defendant to a Waffle House restaurant, where they parted company. Batey testified that the Defendant's driving on the way to the Waffle House was normal.

The Defendant was indicted on one count of DUI. She was tried on November 11, 1996. After considering the proof presented at trial, the jury found the Defendant guilty as charged. She now appeals to this Court.

In her first issue on appeal, the Defendant argues that the evidence was legally insufficient to support her conviction. The Defendant contends that the evidence does not demonstrate that her ability to drive was impaired through the use of intoxicants. She points to her testimony, corroborated by Shannon Batey, that she consumed only two beers over the course of three hours. Moreover, she contests the testimony of Officers Singer and Ivey regarding the results of her field sobriety tests. Furthermore, she argues that the results of her breath test are not reliable because she used an asthma inhaler prior to the test.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of

illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

In the case sub judice, the trial court instructed the jury on the elements of the charged offense as follows:

> Any person who commits the offense of driving under the influence of an intoxicant is guilty of a crime.
> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
> (1) that the defendant was driving or was in physical control of an automobile or motor driven vehicle;
> (2) that this act occurred on a public road or highway or public street or alley; and,
> (3) that the defendant was under the influence of an intoxicant to the extent her ability to operate an automobile was impaired.
> . . .
> You have heard from the proof that at the time of the defendant's arrest, she consented to and was given a test for the purpose of determining the alcohol content of her blood.
> Evidence from the test that there was, at the time alleged, ten-hundredths of one percent (.10%) or more by weight of alcohol in the defendant's blood, creates an inference that the defendant was under the influence of such intoxicant, and that her ability to drive was impaired.
> If you find from the proof that the defendant was found by means of a blood test or breath test to have ten-hundredths of one percent (.10%) or more by weight of alcohol in her blood, you, the jury, are permitted to infer that the defendant was under the influence of such intoxicant, and that her ability to drive was therefore impaired sufficiently to constitute a violation of the law against driving under the influence of alcohol.
> However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you the jury to draw from any blood or breath test result. Also, the inference may be rebutted by other evidence and circumstances.
> It is for the jury to determine, after a consideration of all the evidence, whether to make the inference which the law permits, the correctness of such inference, and what weight is to be given to such evidence.

See T.P.I. -- Crim. 38.01, 38.05, 38.05(a); see also Tenn. Code Ann. §§ 55-10-401; 55-10-408. The Defendant does not challenge the elements that she was driving an automobile or that she was driving on a public highway. Her complaint focuses solely on the issue of impairment by intoxication.

Reviewing the evidence in the light most favorable to the State, we can only conclude that the proof was legally sufficient to support the Defendant's conviction. Officers Singer and Ivey testified that they observed the Defendant's vehicle being operated in an unsafe manner, crossing over the center line of Highway 96. According to the State's proof, the Defendant was unsteady on her feet and had an odor of alcohol about her. The Defendant performed a series of field sobriety tests, the results of which indicated impairment in the opinion of Officer Singer. The Defendant was then transported to the Williamson County Jail where she was administered a breath test on an Intoximeter 3000. The results of the breath test revealed that the Defendant had a 0.15% blood alcohol content.

Of course, the Defendant contests the testimony of Officers Singer and Ivey regarding her manner of driving on the night of the offense and the results of the field sobriety tests. The resolution of the conflicting testimony, however, was a matter for the jury to resolve. The jury resolved the issue against the Defendant, finding her guilty. In addition, although the Defendant testified that she had used an asthma inhaler prior to her breath test, she offered no expert proof concerning the effects that the inhalant might have on the results of her breath test. It was for the jury to decide whether to accredit the Defendant's testimony regarding her use of an asthma inhaler and whether her testimony

created any doubt about the validity of the breath test results. Once again, the jury resolved the issue against the Defendant. From our review of the record, we believe that the evidence was legally sufficient to support the jury's verdict. The Defendant's first issue lacks merit.

In her second issue on appeal, the Defendant argues that the trial court erred in admitting the result of the Intoximeter 3000 breath test. More specifically, she contends that the State did not demonstrate that she was observed for twenty minutes immediately prior to the breath test. See State v. Sensing, 843 S.W.2d 412, 416 (Tenn. 1992). Prior to trial, the Defendant filed a motion to suppress the result of the breath test. The trial court treated the motion to suppress as a motion in limine and conducted a hearing on July 29, 1996. At the hearing, the Defendant, Officer Singer and Officer Ivey all testified. At the conclusion of the hearing, the trial court denied the Defendant's motion, ruling that the result of the breath test was admissible.

In Sensing, our Supreme Court set forth the criteria for the admissibility of breath test results, holding that the testing officer must be able to testify to the following:

> (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

Sensing, 843 S.W.2d at 416. The Defendant's challenge in this appeal is directed solely at the fourth requirement, the twenty-minute observation period.

In the present case, it is undisputed that the period between the Defendant's arrest and the administration of the breath test exceeded twenty minutes. The focus of the dispute centers instead upon exactly what occurred during that period of time. Officer Singer testified that during the trip from the scene of the arrest to the jail, Officer Ivey sat in the backseat of the patrol car next to the Defendant for the express purpose of observing her prior to the breath test. Likewise, Officer Ivey testified that he sat in the backseat of the patrol car during the trip to the jail and observed the Defendant. According to Officer Ivey, the Defendant did not cough, regurgitate, consume liquids, use her inhaler or put anything in her mouth during the period of observation. Officer Singer administered the breath test to the Defendant upon their arrival at the jail.

In contrast, the Defendant testified that Officer Ivey sat in the front passenger seat of the patrol car during the trip to the jail. She testified further that Ivey and Singer were carrying on a conversation during the trip, not observing her. In fact, the Defendant stated that she was able to remove the handcuffs from her hands and use her asthma inhaler during the trip.

After hearing the conflicting testimony at the pretrial motion hearing and evaluating credibility, the trial court found that the twenty-minute observation requirement had been met and ruled that the Defendant's breath test result was admissible. The trial court was in a better position to evaluate credibility than this Court. We believe this record does contain sufficient proof to establish that the

twenty-minute observation period was satisfied. Accordingly, we cannot conclude that the trial court erred in admitting the result of the breath test. The Defendant's second issue lacks merit.

In her third issue on appeal, the Defendant argues that the trial court erred in admitting testimony concerning the HGN field sobriety test. In particular, she contends that the HGN test is scientific evidence and that the State did not present proof that the HGN test meets the standard of general acceptance in the scientific community. See Frye v. U.S., 293 F. 1013 (D.C. Cir. 1923). Thus, because the State did not establish the reliability of HGN testing through acceptance in the scientific community, Officer Singer's testimony concerning the results of the HGN test performed upon the Defendant should not have been admitted.

Prior to trial, the Defendant filed a motion in limine to preclude the State from offering testimony regarding the results of the HGN test without first requiring the State to demonstrate that the HGN test is generally accepted in the scientific community. The trial court ruled that the results of HGN testing are not scientific evidence and, therefore, the State was not required to prove acceptance in the scientific community.

Our supreme court recently provided guidance on this issue in State v. Murphy, 953 S.W.2d 200 (Tenn. 1997). Contrary to the trial court's ruling in the case at bar, our supreme court held in Murphy that the HGN test is a scientific test. Murphy, 953 S.W.2d at 201. As such, HGN evidence must satisfy the admissibility requirements applicable to scientific evidence. Id. Contrary to the

Defendant's argument in the present case, however, the applicable admissibility requirements do not stem from Frye. Rather, the 1991 adoption of Rules 702 and 703 of the Tennessee Rules of Evidence superseded the general acceptance test of Frye. McDaniel v. CSX Transportation, Inc., 955 S.W.2d 257, 265 (Tenn. 1997). In explaining the admissibility requirements for scientific evidence set forth in Rules 702 and 703, our supreme court stated the following:

> In Tennessee, under the recent rules, a trial court must determine whether the evidence will substantially assist the trier of fact to determine a fact in issue and whether the facts and data underlying the evidence indicate a lack of trustworthiness. The rules together necessarily require a determination as to the scientific validity or reliability of the evidence. Simply put, unless the scientific evidence is valid, it will not substantially assist the trier of fact, nor will its underlying facts and data appear to be trustworthy, but there is no requirement in the rule that it be generally accepted.

> Although we do not expressly adopt Daubert [v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)], the non-exclusive list of factors to determine reliability are useful in applying our Rules 702 and 703. A Tennessee trial court may consider in determining reliability: (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether, as formerly required by Frye, the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

Id.

In the case sub judice, the trial court found that the results of the HGN test did not constitute scientific evidence. In light of our supreme court's holding in Murphy, the trial court's finding was erroneous. See Murphy, 953 S.W.2d at 201. The trial judge, because he did not find HGN evidence to be scientific, obviously made no determination with regard to whether the HGN evidence satisfied the admissibility requirements applicable to scientific evidence. From the record now

before us, we are unable to determine whether the applicable admissibility requirements were met. See Murphy, 953 S.W.2d at 201-02.

Considering the record in its entirety, however, we do not believe that the admissibility of Officer Singer's testimony concerning the results of the Defendant's HGN test appears to have affected the result of the trial on the merits. The State offered a great deal of evidence other than the results of the HGN test in support of the guilt of the Defendant. Officers Singer and Ivey testified that the Defendant's car crossed the center line of Highway 96, that the Defendant was unsteady on her feet, and that they noticed an odor of alcohol about the Defendant. In addition, Officer Singer testified that the results of the walk and turn test and the one-legged stand test indicated that the Defendant was impaired due to intoxication. Furthermore, Officer Singer testified that the result of the breath test administered to the Defendant revealed that she had a 0.15% blood alcohol content.

The Defendant contested numerous aspects of the State's evidence, including the testimony regarding her manner of driving, whether she was steady on her feet, her performance on the walk and turn test and whether the one-legged stand test was even performed. Moreover, the Defendant successfully cross-examined Officer Singer regarding his knowledge of the HGN test. Although Officer Singer testified on direct examination that he was trained and certified to administer the HGN test, cross-examination revealed that Singer did not recall having been taught about the effect various prescription drugs might have on nystagmus. Singer admitted that he did not know if some drugs might cause early or exaggerated nystagmus or that fatigue might have an effect on

nystagmus. In short, the cross-examination of Officer Singer was vigorous and called into question the depth of his knowledge of the HGN test.

In spite of the Defendant's rigorous cross-examination concerning the HGN test and her own testimony contradicting the observations of Officers Singer and Ivey, it is clear from the guilty verdict that the jury simply did not accredit the Defendant's version of the facts. The jury performed its function of evaluating credibility and resolving contradictory testimony, eventually finding that the State had established the Defendant's guilt beyond a reasonable doubt. In view of the volume of evidence other than the HGN test offered by the State to support the guilt of the Defendant, we conclude that any error on the part of the trial court in admitting the HGN evidence was harmless under the circumstances of this case. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

For the reasons set forth in the discussion above, we conclude that the Defendant's issues on appeal provide no basis for the reversal of her conviction. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
JOSEPH M. TIPTON, JUDGE